Doe v New York City Police Dept. (2021 NY Slip Op 00009)





Doe v New York City Police Dept.


2021 NY Slip Op 00009


Decided on January 05, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 05, 2021

Before: Renwick, J.P., Gische, Kern, Oing, Mendez, JJ. 


Index No. 118182/09 Appeal No. 12763 Case No. 2019-3747 

[*1]John Doe, Plaintiff-Appellant,
v
New York City Police Department, et al., Defendants-Respondents.


Derek Smith Law Group, PLLC, New York (Ishan Dave of counsel), for appellant.
James E. Johnson, Corporation Counsel, New York (Jane L. Gordon of counsel), for respondents.



Order, Supreme Court, New York County (W. Franc Perry, J.), entered October 12, 2017, which, insofar as appealed from, granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion denied.
Plaintiff is a homosexual man who graduated from the Police Academy in 2006 and by November 2008 rose to the rank of detective, third grade. Viewing the record in the light most favorable to plaintiff as nonmovant, beginning within a short time after he joined defendant New York City Police Department (NYPD), it became widely known that he was gay, because, among other factors, homophobic colleagues vindictively published that fact by calling officers wherever plaintiff was stationed and telling them to harass plaintiff because he was gay. When plaintiff began his assignment at NYPD's Internal Affairs Bureau's (IAB) Command Center beginning in the summer of 2007, plaintiff was immediately exposed to two sergeants who quickly surmised, based on his responses to their constant homophobic slurs directed at civilians and gay officers, that plaintiff was gay. Other officers joined in, condoned and encouraged by the sergeants, and plaintiff thereafter endured over a year of homophobic derision, harassment, and verbal abuse. The foregoing establishes a claim for employment discrimination, via hostile work environment, under the State and City HRLs (see Sims v Trustees of Columbia Univ. in the City of N.Y., 168 AD3d 622, 623 [1st Dept 2019]; Anderson v Edmiston & Co., Inc., 131 AD3d 416, 417 [1st Dept 2015]). Vulgar, homophobic remarks that were levelled at plaintiff during his assignments at the IAB's Vehicle Identification Unit (VIU) and at the Manhattan Courts section, while not necessarily actionable on their own, likewise form components of the overall broader hostile work environment tolerated and condoned by defendants during plaintiff's employment (see Suri v Grey Global Group, Inc., 164 AD3d 108, 115 [1st Dept 2018], appeal dismissed 32 NY3d 1138 [2019]).
Following several years during which plaintiff endured homophobic harassment, including by supervisors, at the various commands to which he was assigned, plaintiff was transferred to his final assignment at the 77th Precinct. There, plaintiff was repeatedly required to enter a holding cell, by himself, with prisoners still inside, while plaintiff carried metal and wooden cleaning implements. This was potentially dangerous, as plaintiff could have been overwhelmed and attacked by the prisoners. Other officers were not required to do it, as it was usually a task for the maintenance crew. Being singled out to do a task which peers are not required to do, and which is dangerous, is an adverse employment action under both the State and City HRLs (see Askin v Department of Educ. of the City of N.Y., 110 AD3d 621, 622 [1st Dept 2013]). It can be inferred that plaintiff's supervisor knew that plaintiff was gay and was motivated by animus [*2]when she repeatedly directed him to enter the holding cells alone to clean them.
Plaintiff was also required to go on foot patrol alone during the midnight shift in dangerous areas at the 77th Precinct; other officers patrolled with partners. These midnight solo patrols were dangerous and actionable as adverse employment actions effected under circumstances supporting an inference of discrimination. These dangerous assignments were likewise serious enough also to support plaintiff's causes of action for constructive discharge (see Pennsylvania State Police v Suders, 542 US 129, 141 [2004]).
We also restore plaintiff's employment discrimination claim under the City HRL in that he was given extra work when he arrived at the VIU. Plaintiff was thus disadvantaged under circumstances supporting an inference of discrimination (see James v City of New York, 144 AD3d 466, 467 [1st Dept 2016]).
Finally, we also restore plaintiff's a claim for retaliation. An employer's conduct after the employee engaged in protected activity does not constitute retaliation where it is a continuation of the course of the employer's conduct before the employee engaged in the protected activity (Melman v Montefiore Med. Ctr., 98 AD3d 107, 129 [1st Dept 2012]). However, the complaint here alleges at least some "new" or escalated conduct after the protected activities took place (see O'Rourke v National Foreign Trade
Council, Inc., 176 AD3d 517, 518 [1st Dept 2019] ["Whether the motivation for this
conduct was retaliation or continued discrimination cannot be determined at this stage of the litigation"]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 5, 2021